## SCHROEDER BROS. *v.* UNITED STATES (No. 2752)[1]

TOMATO PASTE.

Ripe tomatoes were mashed, boiled down to a thick fluid, strained, and canned. The overruling of a protest against classification as tomato paste, under paragraph 770, Tariff Act of 1922, claiming classification as tomatoes prepared, under the same paragraph, is affirmed.

United States Court of Customs Appeals, November 19, 1926

APPEAL from Board of United States General Appraisers, Abstract 50727

[Affirmed.]

*Allan R. Brown* for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter* and *Ralph Folks*, special attorneys), for the United States.

---

[1] T. D. 41882.

[Oral argument October 7, 1926, by Mr. Brown and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

The merchandise in this case is manufactured from tomatoes and is imported in hermetically sealed tins.   It was classified and assessed by the collector as tomato paste under the second provision of paragraph 770 of the Tariff Act of 1922.   The paragraph reads as follows:

Tomatoes in their natural state, one-half of 1 cent per pound; tomato paste, 40 per centum ad valorem; all other, prepared or preserved in any manner, 15 per centum ad valorem.

In their protest importers claimed classification under the last provision of the paragraph or, in the alternative, as a sauce under paragraph 773 of the act providing for—

* * * sauces of all kinds, not specially provided for * * * 35 per centum ad valorem. * * *

The Board of General Appraisers, now the United States Customs Court, overruled the protest.   Importers appealed.

At the hearing before the board the Government called no witnesses. Importers called several, evidently attempting to prove thereby, among other things, that the merchandise was commercially known as tomato sauce or sauce.   Respecting this evidence the board, in substance, well said that some of the testimony was to the effect that it was known as tomato sauce and some that it was known as tomato paste.   It failed to find any commercial designation, and a careful examination of the record satisfies us that in this respect the board did not err.

The next question in order is whether the importation is a sauce in fact.   As to this, counsel on both sides agree that it is not and also agree that it is a material from which sauces are made.   It therefore becomes unnecessary to consider further the applicability of paragraph 773.   The only remaining question is, under which of the last two provisions of paragraph 770 the importation is classifiable.

Importers contend that the commodity is not a tomato paste in the ordinary meaning of that term because it is a fluid, arguing, in effect, that a paste can not be fluid.

It is material on this question to know somewhat as to how it is produced.

One of importers' witnesses was asked with reference to certain exhibits typifying the importation:

Q. Do you know how this is prepared?—A. Yes, sir, by mashing the tomatoes and boiling them down to a certain percentage of consistency.

Q. Strained?—A. Yes.

Q. Boil it until it comes to a certain consistency?—A. Yes.

Q. They evaporate the water out of it?—A. Evaporate it.

Q. How does that differ from making tomato paste?—A. They allow all the water contained in the tomato; strain it.

Q. All the difference then between this and tomato paste is that tomato paste has less water?—A. And the salt; it is salted. The tomato paste is salted.

Q. And this (exhibits) has been salted?—A. No, sir.

Q. Has anything been put into it?—A. Nothing at all. Occasionally they put in basil leaf.

Q. What is that?—A. A vegetable they use.

Q. For flavoring or coloring or what is it?—A. For flavoring.

The method of making what importers contend is tomato paste was testified to by the same witness as follows:

Q. Will you state * * * how the article which you have spoken of as tomato paste is produced?—A. The tomatoes are mashed——

Q. Ripe tomatoes?—A. Ripe tomatoes—and strained through a sieve by hand; whatever comes out is put in a cheese cloth bag, let it drain for twenty-four hours or more, and then it is left in those cheese cloth bags and is boiled down. Then it is highly salted, put on platters and laid in the sun until it comes of a consistency that can be easily handled by hand.

Q. What is done with it then?—A. Then it is put in barrels or in tins.

Q. In that condition what is its consistency?—A. It is very thick.

The testimony also tended to show that such tomato paste might keep for a year or two, provided the containers were kept covered, while the importation, after the can containing it is opened, will keep no more than two days at the most.

One of the importers' witnesses was an examiner of merchandise at the port of New York, who identified Exhibits 1, 2, and 3 as being of the same kind and class as the importation and said he had examined this class of merchandise for about four years; that there was a commodity known as tomato paste which was imported in both cans and barrels and that there was less moisture in that than in the importation here involved. He was asked:

Q. Is that the only difference?—A. I have never had it analyzed, but the odor is different.

Q. You do not know whether one has seasoning and the other had not?—A. No, I do not. I do not think one is seasoned from my experience.

Q. Which one?—A. The paste that comes in barrels, tomato paste.

Q. That is seasoned, is it?—A. It has not any very high seasoning.

In another connection he testified that a certain sample of what importers claimed was tomato paste was similar to one of the exhibits which represented the importation and said:

From my experience I would call this tomato paste the subject of the controversy.

The record is somewhat confusing. The degree of fluidity of the importation or of the so-called tomato paste exhibits does not appear to have been especially called to the attention of the board. In this court counsel has opened a can the contents of which it is agreed

represent the character of the merchandise in question. Such contents flow somewhat freely and the mass readily adapts itself to the shape of the container into which it is poured.

Importers strenuously argue that such a degree of fluidity excludes its classification as tomato paste under paragraph 770, claiming that the common meaning of the term "paste" must be held to refer only to something less fluid than the importation here.

We are unwilling to say, as matter of law, in view of the record, that the importation here is not tomato paste as that term is used in the paragraph, because of the degree of its fluidity.

On the whole record the board made the following finding:

Upon an examination of these samples the commodity is found to be a thick, red substance, distinctly in a paste formation.

We think the evidence shows clearly that as imported it is not used as a sauce without further manipulation and additions. As compared with what seems to be shown to be paste, it is practically identical. It was classified as paste and in our judgment the testimony of the importer has not overcome the presumption of correctness attaching to the collector's classification, supported by the other evidence in the case.

We therefore find the importation to be tomato paste, and overrule the protest.

We do not feel warranted in holding this to be error either of fact or law, and the judgment below is *affirmed*.