F. N. Giavi v. United States (No. 3343)[1]

United States Court of Customs and Patent Appeals, January 28, 1931

Allan R. Brown for appellant.

Charles D. Lawrence, Assistant Attorney General (Marcus Higginbotham, special attorney, of counsel), for the United States.

[Oral argument December 10, 1930, by Mr. Brown and Mr. Higginbotham]

Before Graham, Presiding Judge, and Bland, Hatfield, Garrett, and Lenroot Associate Judges

Garrett, Judge, delivered the opinion of the court:

This appeal involves the classification of a commodity described by the appraiser as "tomato paste put up in hermetically-sealed tins."

It was assessed for duty by the collector at 40 per centum ad valorem under paragraph 770, Tariff Act of 1922.

The full paragraph reads as follows:

Par. 770. · Tomatoes in their natural state, one-half of 1 cent per pound; tomato paste, 40 per centum ad valorem; all other, prepared or preserved in any manner, 15 per centum ad valorem.

Appellant protested the collector's classification, claiming the merchandise to be dutiable at only 15 per centum under the last portion of the paragraph, or, in the alternative, at 35 per centum ad valorem under the provision in paragraph 773:

* * * sauces of all kinds, not specially provided for; * * *

The Customs Court overruled the protests and rendered judgment for the Government, from which judgment the instant appeal was taken.

Merchandise of the exact character of that here involved was at issue in the case of Schroeder Bros. v. United States, heard and determined by this court in 1926, the opinion by the late Judge Barber being reported in 14 Ct. Cust. Appls. 267, T. D. 41882. We there affirmed a judgment of the Board of General Appraisers (now the United States Customs Court), holding the material dutiable, as "tomato paste," at 40 per centum ad valorem.

[1] T. D. 44618.

The present suit is, therefore, a retrial of the issues which were involved in the *Schroeder* suit, the record of which has been incorporated in the present case by consent. Further testimony was also taken in the present case, the importer calling three new witnesses and the Government five.

There is no question of commercial designation as distinguished from the common meaning of the term "tomato paste" presented in the case at bar. It is the contention of appellant that the new testimony, when taken in connection with that of the prior case, shows "distinctly that the merchandise at bar is not a paste in fact but a fluid." A number of exhibits were placed in evidence. Some of these, representing the article of importation, have doubtless deteriorated from age, to some extent, and the material has probably undergone some changes in character. It may be that, as counsel for appellant contends, it has lost some of its fluidity and is now more dense in texture than at the time of its importation.

In the former suit, *Schroeder, supra,* this court said:

> The record is somewhat confusing. The degree of fluidity of the importation or of the so-called tomato-paste exhibits does not appear to have been especially called to the attention of the board. In this court counsel has opened a can the contents of which it is agreed represent the character of the merchandise in question. Such contents flow somewhat freely and the mass readily adapts itself to the shape of the container into which it is poured.

In the case at bar the record indicates that an exhibition of the flowing of the sample was made in the presence of the trial court so that its attention was directed specifically to the "fluidity of the importation."

Nevertheless, the trial court, after reviewing the new testimony proffered in behalf of the importer, continued:

> The Government called five witnesses, all of them dealers in tomato products, both foreign and domestic, and all well qualified by experience and extensive dealings all over the United States to give testimony on the issue. We consider it unnecessary to review their testimony in detail. It is sufficient to say that they were familiar with products like the one in suit, that they were in the habit of making large sales of tomato products, including tomato paste, and that they testified that the imported article was one of the many brands, kinds, or grades of tomato paste on the market. From their testimony it further appears that tomato paste is of different grades or qualities according to the percentage of solid contents, and that Exhibit 1 could clearly be included within the designation "tomato paste."
>
> Upon the whole record we find that the merchandise in suit is in fact tomato paste, and that it is bought, sold, dealt in, and known in the trade and commerce of this country as such. We hold that it is properly dutiable under the provision for tomato paste in paragraph 770, as assessed.

It seems to us that the trial court has fairly and correctly stated the import of this new testimony, and, in this case, as in the *Schroeder* case, *supra,* we are content to state:

We are unwilling to say, as matter of law, in view of the record, that the importation here is not tomato paste as that term is used in the paragraph, because of the degree of its fluidity.

We have examined the legislative history of the paragraph. It is not deemed necessary to review it. We find nothing therein to indicate any legislative intent which differs from the conclusion reached by the Customs Court.

The judgment of the Customs Court is *affirmed.*